[Crim. No. 11780. Second Dist., Div. Four. June 6, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. OSCAR CHARLES MITCHELL, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard D. Huffman, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged by information with violation of section 11530 of the Health and Safety Code (possession of marijuana) a felony, and with having been previously convicted of a crime in violation of section 23105 of the Vehicle Code, a misdemeanor. Defendant pled not guilty, admitted the prior, waived jury, and was found guilty as charged. After examination pursuant to section 6451 of the Penal Code (now Welfare and Institutions Code section 3051), defendant was found to be addicted to, or in imminent danger of being addicted to, narcotics. Criminal proceedings were adjourned and defendant was committed to the Department of Corrections. Defendant was thereafter returned from the Narcotic Rehabilitation Facility pursuant to a writ of habeas corpus. On June 9, 1965, a probation and sentence hearing was held and a supplemental probation report ordered. On July 2, 1965, judgment was passed, probation was denied and defendant was sentenced to state prison for the term prescribed by law. Defendant appeals.

On December 8, 1961, police officers went to a location to arrest Albert Stukes, who was listed on a grand jury narcotics indictment list. The officers observed Stukes in a room and arrested him.

Following the arrest of Stukes, Officer Higgins turned to defendant, who had been standing in the doorway talking to

Stukes. The officer then looked at defendant, checked the narcotics list, and concluded that a John Doe Number 9 on the list fitted the description of the defendant. Defendant was placed under arrest and handcuffed.

Officer Higgins asked defendant if there were any narcotics in the apartment. Defendant said he didn't think so but he could look around. The officer found eight brown paper wrapped cigarettes, a hypodermic needle and two packages of zig-zag wheat paper in the nightstand drawer. A conversation took place[1] and defendant said that he bought the marijuana for his own use, that he didn't sell it, and that he had forgotten who he bought it from or how much he paid for it. He stated also that he used the "outfit" to "shoot a little stuff" and that the outfit was his.

The officer did not have a warrant to arrest defendant or search his apartment.

It was stipulated by counsel that if an expert forensic chemist had been called he would have testified that the cigarettes in Exhibit 1 contained marijuana.

Stukes testified that he was in the hallway talking to defendant when a police officer pushed him into defendant's room (contrary to the officer's testimony that Stukes was already in defendant's room). Stukes testified that he was then handcuffed and taken by the police across the hall to his own apartment.

Defendant testified that he did not consent to the search. On the cross-examination he admitted that he used narcotics.

Defendant contends that the evidence obtained during the search of defendant's room was improperly admitted into evidence.

At the trial, and here, the People support the search of defendant's room, and the admissibility of the narcotics and other articles thus found, on the sole basis that the officer had reasonable grounds to believe defendant guilty of a felony, that he had arrested defendant for that reason, and that defendant's room was searched as an incident to the arrest of defendant.

 In an arrest without a warrant, the prosecution has the burden of showing justification. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269 [294 P.2d 23].) A search

[1]The record does not show what, if any, questions the officer asked defendant. It merely indicates that a "conversation" took place.

cannot be justified by what it turns up. (*People* v. *Privett* (1961) 55 Cal.2d 698 [12 Cal.Rptr. 874, 361 P.2d 602].)

■ If the arrest was not lawful, it cannot be the basis for a lawful search. (*People* v. *Brown* (1955) 45 Cal.2d 640 [290 P.2d 528].)

The prosecution attempted to establish the validity of the arrest on the ground of reasonable cause to believe defendant guilty of a felony by the testimony of the officer that defendant fitted the description of John Doe Number 9 in his indictment list. However, not only was the indictment with the description never entered into evidence, but the officer never testified as to how or in what way defendant fitted that description. In fact, the officer's testimony that defendant fitted the description of John Doe Number 9 was objected to as a conclusion of the witnesses, the objection was sustained by the court, and there appears to be no further discussion of ''description'' in the record.

■ The prosecution correctly asserts that a probable cause for an arrest can be furnished by a description given by a robbery victim. (*People* v. *Wright* (1963) 216 Cal.App.2d 866, 871 [31 Cal.Rptr. 432].) However, this proposition of law is of little aid in the case at bench where there is no showing that defendant did in fact fit the description of the John Doe Number 9 listed in the indictment. Therefore, the prosecution has not sustained its burden.

■ The prosecution's assertion that defendant consented to the search is not well taken. ''A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest, however, is inextricably bound up with the illegal conduct and cannot be segregated therefrom.'' (*People* v. *Haven* (1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927]; see also, *People* v. *Wilson* (1956) 145 Cal.App.2d 1, 7 [301 P.2d 974].)

■ Defendant asserts that it was error to admit into evidence his statements that he made admitting ownership and use of the narcotics, as a violation of *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. Since the arrest was unlawful, the statements made by defendant after his arrest were obviously fruits of that arrest. It follows that, whether or not they were obtained in violation of the rules laid down in *Dorado,* they were inadmissible.

However, it is not impossible that, on a new trial, the People may be able to show that the officer did, in fact, have a description of John Doe Number 9 sufficient to entitle him to

arrest the person so described, and that defendant did fit that description with sufficient particularity to have justified the officer in reasonably believing that defendant was, in fact, the individual indicted by the grand jury. Alternatively, although the present record would not support the contention, there may be available evidence to show that the officer had reasonably thought that Stukes had a relation to defendant's room such as to justify a search of that room as an incident to the Stukes arrest.

In the event that the case should be retried, with evidence sufficient to show that the arrest and search were lawful, the court and parties can then inquire into the admissibility of defendant's statements, in the light of the then state of the law.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied June 26, 1967.