[Crim. No. 11508. Fourth Dist., Div. One. Oct. 17, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL MURPHY, Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, and Handy Horiye for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Michael D. Wellington, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WEINER, J.**—A jury convicted Michael Murphy of the following: counts one and two—Rape (Pen. Code, § 261, subd. 3)[1] and rape in concert (§ 264.1); counts three and four—Oral copulation in concert (§ 288a, subd. (d)); count five—Sodomy in concert (§ 286, subd. (d)); count six—Burglary (§ 459) while armed with a firearm and with the infliction of great bodily injury (§§ 12022, 461); count seven—Robbery (§ 211) while armed with a firearm (§ 12022).

---

[1] All references are to the Penal Code unless otherwise specified.

He was ordered to serve consecutive prison sentences on counts one, three, four, five and six. His sentences on counts two and seven were stayed pending appeal. (See *People* v. *Niles* (1964) 227 Cal.App.2d 749, 755-756 [39 Cal.Rptr. 11]; *In re Wright* (1967) 65 Cal.2d 650, 654-656 [56 Cal.Rptr. 110, 422 P.2d 998].) In *People* v. *Murphy* (Apr. 16, 1979) 4 Crim. 8798 (unpub. opn.), we struck the great bodily injury finding in count six (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 587 [146 Cal.Rptr. 859, 580 P.2d 274]), and remanded to the trial court for resentencing on count two. At resentencing the court removed its stay of count two which was ordered to be served consecutively. Defendant appeals. We affirm.

Sentencing. We set the scene. The judge said: "Often times at the time of sentencing, it is appropriate and helpful for the court to try to reason with and explain to a defendant the reason for the sentence that he receives in the hope that he may learn something. I don't think it's possible for this defendant to learn anything. He is essentially an unredeemable piece of humanity and our problem in society is to figure out what to do with him for so long as he is with us. That presents a serious problem for the court. However it is necessary I think for the court to state on the record some of the motivation which impels it to give as much or as maximum a sentence as possible, because under our present system of criminal jurisprudence, every case is appealed diligently and with fervor and in any area of weakness or apparent lack of procedure completeness in a trial is reviewed with minute attention.

"Therefore let us simply summarize the facts of this case by saying that it was a peculiar abhorrent crime. I think those who may have read about it and not have been close to the details of the crime would universally have been revolted by the facts of a gang of young hoodlums attacking, in a most despicable way, a vacationing family, savagely attacking a teenage virginal girl, cowing their male relatives into submission, attacking in as despicable a manner as can be conceived, a middle aged mother, all in the same general area.

"It is a crime that leads one to think that whatever the punishment may be, it will be inadequate. . . .

"Therefore the primary consideration which must motivate the court is to keep him in prison as long as conceivably possible recognizing that whatever time that is, he will still be relatively young antagonistic, antisocial person.

"Therefore the court is motivated to impose sentences in a manner as consecutive as may be possible, and, I disagree with Mr. Haddad [deputy district attorney], that it is not appropriate to sentence consecutively for the oral copulation on the two females as those were indeed separate, different visible crimes."

We do not believe the court's comments reflect an arbitrary vindictiveness towards this particular defendant. On this record the statements indicate only a rational observation of what is essential in certain cases—incarceration of a criminal for the longest possible time permitted by law.

■ Defendant first claims the court was without jurisdiction to modify its sentence because we failed to use the magic word "reverse" in our earlier opinion. He does not suggest, nor could he, there is any ambiguity in what we said. Our intent was clearly manifested in the following: "The record indicates the trial judge stayed execution of count two, the rape of the daughter, because the same acts were involved in the defendant's punishment for his conviction of burglary with great bodily injury. (Pen. Code, § 654.) With the elimination of those acts pursuant to *Caudillo*, the trial court may wish to reconsider the sentence as to count two."

Also, in our disposition "the judgment is modified to strike the great bodily injury finding under Penal Code section 461 and, except as modified, the judgment is affirmed. *The case is remanded to the trial court for the purpose of determining what action, if any, is appropriate as to the sentence on count two.*" (Italics added.)

A reversal of the judgment is not essential to vest jurisdiction in the trial court for resentencing. Frequently, the judgment of conviction is affirmed, and the case remanded for resentencing in accordance with the views expressed in the opinion. (See, e.g., *People* v. *Harvey* (1979) 25 Cal.3d 754, 761 [159 Cal.Rptr. 696, 602 P.2d 396].) In retrospect, the phraseology of our affirmance might have been improved if we had said we were affirming the judgment *of conviction.* The omission of these two words where we expressly remanded this case to the trial court for resentencing can hardly be equated with an affirmance of the entire judgment including sentencing.

The word "judgment" is admittedly ambiguous. In section 1237 it may mean conviction, sentence, order granting probation or the com-

mitment of a defendant as a mentally disordered sex offender. Precision with language may well require "judgment" always be clarified with modifying words to indicate specifically whether it means conviction, sentencing or order of probation. The failure to do so here, however, with otherwise express, articulate and direct language telling the trial court to act does not deprive that court of jurisdiction to comply with our instructions.

■ Defendant also argues double jeopardy prevents the court from modifying its stay order. He says a more severe sentence cannot be imposed following his successful appeal. (See *People* v. *Henderson* (1963) 60 Cal.2d 482, 495-497 [35 Cal.Rptr. 77, 386 P.2d 677].)

Although it appears as a practical matter defendant's total sentence has been reduced by five years, we do not rest our decision solely on that ground.[2] We hold defendant's sentence on count two was not changed from a concurrent to a consecutive sentence.

The court's statements at sentencing reflect its intent that all sentences imposed, including those which were stayed, were to be served consecutively. The judge in a forthright manner told the defendant, and the public, that he wanted this defendant to be imprisoned as long as possible as he was "motivated to impose sentences in a manner *as consecutive as may be possible...*" (Italics added.) Under such circumstances there was no need for him to repeat his statements in staying execution of the sentences on counts two and seven. As a matter of logic under the circumstances of this case where the sentence is stayed under section 654 to permit execution of a consecutive sentence, the stayed sentence is also a consecutive sentence without the need for further pronouncement of that fact at sentencing.

Here, because the same acts were involved, section 654 required count two with its lesser punishment to be stayed when a consecutive sentence on count six was imposed. In staying the sentence it would have been redundant, logically unnecessary, for the court to have stated that if count six were reversed on appeal its surrogate, count two, would be served consecutively. The consecutive sentence on count two under

---

[2]At the time of sentencing section 461, the great bodily injury finding, added 10 years to defendant's minimum term. Defendant's new sentence on the rape charge in count two (§ 264.1) adds only five years to his minimum term.

such circumstances was implied. Obviously at resentencing and upon further review the court can impose a lesser, concurrent, sentence. Defendant did not suffer double jeopardy.

*The Consecutive Sentence on the Burglary*
*Count Does Not Violate Section 654*

Defendant argues that all the crimes of which he was convicted arose out of a single continuous transaction. Consequently, the sentence on count six, burglary, amounts to double punishment proscribed by section 654.

■ Section 654 bars multiple punishment for an indivisible course of conduct which violates more than one statute. (*People* v. *James* (1977) 19 Cal.3d 99, 119 [137 Cal.Rptr. 447, 561 P.2d 1135].) Because concurrent sentences for crimes based on one act where the transaction is indivisible constitutes multiple punishment (*In re Wright, supra,* 65 Cal.2d 650), the appropriate procedure is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned. (*People* v. *Niles, supra,* 227 Cal.App.2d 749, 756; Cal. Rules of Court, rule 449.) The question, however, of whether the acts of which defendant has been convicted constitute an indivisible course of conduct is primarily a factual determination, made by the trial court on the basis of its findings concerning the defendant's intent and objective in committing the acts. This determination will not be reversed on appeal unless unsupported by the evidence presented at trial. (*People* v. *Ferguson* (1969) 1 Cal.App.3d 68, 74-75 [81 Cal.Rptr. 418].)

■ Defendant, having made no comment on this issue at his initial sentencing, during his appeal or on resentencing, now claims the evidence shows that his intent at the time he broke into the hotel room was to commit the sexual crimes. The record belies his statement for there is no indication he was even aware there were women in the room before it was broken into. The record supports the court's finding it was defendant's intent upon entry to steal money or property, including obtaining that property by force if necessary. However, once defendant and his companions were in the room, they discovered the sleeping women and then proceeded to commit the crimes which the court at sentencing so graphically described. The entry into the room to steal is distinct from the intent and objective to enter for the purpose of the sex crimes. Since the intent and objectives for the respective crimes are clearly divisible,

separate punishment is proper. (See *People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].)

*Disposition*

The judgment in all respects is affirmed.

Brown (Gerald), P. J., and Lord, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.